O

JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| MARIA WU,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>THE BOEING COMPANY,<br><br>　　　　　Defendant. | Case No.: SACV 11-1039 DOC(ANx)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. 14)** |

　　　Before the Court is a Motion for Summary Judgment filed by Defendant The Boeing Company ("Defendant"). (Dkt. 14). After reviewing the moving papers and oral argument, the Court GRANTS Defendant's Motion for Summary Judgment on all eight claims brought by Plaintiff Maria Wu ("Plaintiff").

**I.　　Background**

The gravamen of Plaintiff's Complaint is that Defendant terminated her due to her race, gender, or age. As explained in the Discussion section, Plaintiff's evidence is either inadmissible or irrelevant.

### a. Plaintiff's eight claims

The Complaint brings the following claims: (1) wrongful termination in violation of public policy under California law; (2) discrimination based on race, gender, and age[1] in violation of California Government Code §12940(a) *et seq.*, and the California Constitution Article I Section 7[2]; (3) retaliation; (4) hostile work environment; (5) breach of implied employment contract; (6) breach of the covenant of good faith and fair dealing; (7) failure to maintain a workplace free of discrimination; and (8) intentional infliction of emotional distress. *See* Notice of Removal Ex. A ("Compl.") (Dkt. 1).

Plaintiff's claims all appear to be premised on the fact that, "[i]n 2008, [she] was given an At Risk of Layoff Notice and, in 2009 [her] employment was terminated." Wu Decl. (Dkt. 21-1) ¶ 1.[3] Defendant contends that this At Risk of Layoff Notice was given due to Plaintiff's relatively low ranking in an August 2008 Reduction In Force ("RIF") Assessment. Plaintiff argues that the August 2008 RIF Assessment were not the real basis for determining which

---

[1] While the Complaint's heading for this cause of action also mentions "national origin," Plaintiffs' opposition makes no argument as to this basis of discrimination and thus Plaintiff does not appear to be arguing that discrimination was based on national origin.

[2] This second claim also references "Due Process, Equal Protection," which appears to be a reference to title of the heading of the California Constitution Article I Section 7.

[3] Frustratingly, several of the statements made in declarations by both Defendant and Plaintiff's witnesses are not reflected in either party's statements of undisputed facts. Thus, the Court must frequently resort to the original declarations themselves rather than to a citation to the statement of undisputed facts. For example, no party appears to have submitted a statement of undisputed fact as to the specific date that Plaintiff was terminated.

employees were terminated because these decisions were actually made at "secret meetings" by management in which race, gender, or age was considered. See Opp'n at 16.

It is undisputed that Plaintiff "did not file any complaints during her employment with [Defendant] prior to her April 2009 complaint to [Defendant's Equal Employment Opportunity] department." Defs. Reply Separate Statement of Undisputed Facts (Dkt. 30) ¶ 24.

### b. Plaintiff's inadmissible evidence

Plaintiff seeks to introduce evidence of: (1) two witnesses' statements about the existence and contents of "secret meetings" where employees were selected for termination; (2) a witnesses' statements about the existence or contents of a list of pre-ranked employees; and (3) a document listing employees' names, races, genders, and ages. As explained below in the discussion section, this evidence is inadmissible.

### c. Plaintiff has not introduced any evidence regarding her comparators' race, gender, or age

Plaintiff also argues that she was terminated "when other less qualified and less experienced employees were not" and identifies comparator employees Furman, Graham, Chang, and Hamilton. Opp'n at 17. As explained in the Discussion section, Plaintiff's evidence regarding Defendant's treatment of these comparators is irrelevant because she has failed to show that they are appropriate comparators.

### d. Procedural History

Plaintiff filed her Complaint on March 1, 2011, and Defendant removed this action to federal court on July 12, 2011. *See* Compl. The first motion in this Court was filed a year later on July 16, 2012, when Defendant filed the present Motion for Summary Judgment (Dk.t 14). Plaintiff did not timely oppose, and thus this Court ordered Plaintiff to file an opposition. *See* July 24, 2012, Minute Order (Dkt. 20).

## II. Legal Standard

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to

have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248-49. A "material fact" is one which "might affect the outcome of the suit under the governing law . . . ." *Id.* at 248. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible evidence identifying the basis for the dispute. *Id.* The court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

**III.   Discussion**

Because all of eight of Plaintiff's claims appear to be premised on the facts underlying Plaintiff's second claim for discrimination, the Court addresses Plaintiff's discrimination claim first and then turns to the remaining claims.

     **a.   Second claim for discrimination based on race, gender, and age**

1   Plaintiff's claims of race, gender, and age discrimination appear to be brought under
2   California Government Code §12940(a), which is part of a larger statutory scheme commonly
3   referred to as the "California Fair Employment and Housing Act (FEHA)."[4] *See Reid v. Google*,
4   50 Cal. 4th 512, 519 (2010) (describing "12900 et seq."). California Government Code
5   §12940(a) provides in relevant part that it is "an unlawful employment practice . . . [f]or an
6   employer, because of the race, . . . gender, . . . [or] age . . . to discharge the person from
7   employment . . . ." Cal. Gov. Code §12940(a).

8   Under California law, employment discrimination is often proved through any of three
9   alternative legal theories: (1) disparate treatment discrimination; (2) disparate impact
10  discrimination; or (3) the failure to make reasonable accommodation where required. Cal. Bus.
11  Law Deskbook § 14:8 (2011 ed.). "Disparate treatment" is where the employer engages in
12  "*intentional* discrimination against one or more persons on prohibited grounds." *Guz v. Bechtel*
13  *Nat. Inc.*, 24 Cal. 4th 317, 354 n. 20 (2000). In contrast, "disparate impact" is where "a *facially*
14  *neutral* employer practice or policy, bearing no manifest relationship to job requirements, *in fact*
15  had a disproportionate adverse effect on members of the protected class. *Id.*

16  While Plaintiff never explains which theory she is pursuing, the Court concludes that she
17  is advancing a disparate treatment theory given her citation to *Guz v. Bechtel Nat. Inc.*, in which
18  the "issue [was] one of disparate treatment." *See* 24 Cal. 4th at 354 n. 20; Opp'n at 16. To
19  establish a prima facie case of employment discrimination under a "disparate treatment" theory,
20  a plaintiff must demonstrate that: (1) she was a member of a protected class; (2) she was
21  qualified for the position she sought or performing competently in the position she held; (3) she
22  suffered an adverse employment action, such as termination or denial of an available job; and

---

[4] The Court concludes that Plaintiff's discrimination claims are based on California Government Code §12940(a) because the Complaint references this statute. Compl. at 9. The Complaint also references California Constitution Article I Section 7, but Plaintiff makes no argument nor cites any law regarding this constitutional basis for her claim and thus the Court concludes that it is abandoned.

(4) "some other circumstance suggests discriminatory motive." *Guz v. Bechtel Nat. Inc.,* 24 Cal. 4th 317, 355 (2000) (discussing age discrimination).[5]

"When entertaining motions for summary judgment in employment discrimination cases arising under state law, federal courts sitting in diversity must apply the *McDonnell Douglas* burden-shifting scheme as a federal procedural rule."[6] *Zeinali v. Raytheon Co.,* 636 F.3d 544, 552 (9th Cir. 2011); *Reid v. Google*, 50 Cal. 4th 512, 520 n.2 (2010) ("In California, courts employ at trial the three-stage test that was established in *McDonnell Douglas* [] to resolve discrimination claims, including age discrimination."). Under the *McDonnell Douglas* burden-shifting scheme as applied by California courts, the employee must first establish a prima facie case of discrimination, which requires her to show "actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a . . . prohibited . . . discriminatory criterion." *Guz*, 24 Cal. 4th at 355 (quotation marks omitted). The "*McDonnell Douglas* test reflects the principle that direct evidence of intentional discrimination is rare, and that such claims must usually be proved circumstantially." *Guz*, 24 Cal. 4th at 354.

Under the *McDonnell Douglas* test, once plaintiff establishes a prima facie case, the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the adverse action. If the employer satisfies this burden, the employee must show that reason to be pretext

---

[5] California's disparate treatment theory borrows from federal law because, due to "the similarity between state and federal employment discrimination laws, California courts look to pertinent federal precedent when applying our own statutes." *Guz*, 24 Cal. 4th at 354; *Godwin v. Hunt Wesson, Inc.,* 150 F.3d 1217, 1219 (9th Cir. 1998) ("Because California law under the FEHA mirrors federal law under Title VII, federal cases are instructive."); *see also Lyle v. Warner Bros. Television Productions,* 38 Cal. 4th 264, 278 (2006) (discussing race and gender discrimination).

[6] The parties agree that the relevant legal test is set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See* Opp'n at 16.

by "either directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Zeinali,* 636 F.3d at 552 (quoting *Dawson v. Entek Int'l,* 630 F.3d 928, 934 (9th Cir. 2011)). If an employee fails to show pretext, the court may grant summary judgment to the employer. *See Guz*, 24 Cal. 4th at 357 (affirming grant of summary judgment to employer because employer satisfied its burden to show a legitimate reason for its adverse employment act which plaintiff failed to rebut).

Regarding Plaintiff's prima facie case, Defendant disputes only whether Plaintiff has established the fourth element of her prima facie case, namely, a circumstance that suggests a discriminatory motive. Mem. (Dkt. 15) at 11. Defendant appears to alternatively argue that, even if Plaintiff has established a prima facie case and the burden shifts to Defendant, Defendant had a legitimate, non-discriminatory reason for the adverse employment action against Plaintiff. The Court need not reach Defendant's alternative argument because Plaintiff has failed to prove a prima facie case.

### i. Plaintiff's prima facie case

Plaintiff's evidence of a circumstance that suggest Defendant's discriminatory motive is either inadmissible or irrelevant.

### 1. Plaintiff's most persuasive evidence is inadmissible

Plaintiff seeks to introduce evidence of: (1) two witnesses' statements about the existence and contents of "secret meetings" where employees were selected for termination; (2) a witnesses' statements about the existence or contents of a list of pre-ranked employees; and (3) a document listing employees' names, races, genders, and ages. While this evidence would certainly be highly probative, it is inadmissible because Plaintiff has written the declarations through which this evidence would be admitted in such a way that they are easily attacked by Defendant as lacking personal knowledge, containing hearsay, and violating the best evidence rule.

          **a. Witnesses' statements about the existence or contents of "secret meetings" outside the August 2008 RIF assessment**

Plaintiff argues that the August 2008 RIF Assessment were not the real basis for determining which employees were terminated because these decisions were actually made at "secret meetings" by management. See Opp'n at 16. However, Plaintiff's evidence of the existence of "secret meetings" outside the August 2008 RIF assessment and the contents of those meetings is inadmissible.

Neher's Declaration regarding the existence and contents of these "secret meetings" is excluded under Federal Rule of Evidence 602 for lack of personal knowledge and under Rule 802 as hearsay because Neher states only he "was told" about the meetings or that he "[was] informed" about their nature, not that he participated in or witnessed them through any of his senses. *See* Neher Decl. (Dkt. 21-2) ¶¶ 3, 4 ("I was told that these meetings were being held for the purpose of pre-selecting certain individuals to target for redeployment and/or layoff."). If the declarations had identified the speaker who told Neher about the meetings as an agent of Defendant, the statements to Neher would have been admissible non-hearsay under Rule 801(d)(2)(D). However, the use of the passive voice—"was told" and "[was] informed"—makes it impossible for this Court to reach that conclusion. *See* Defs. Evid. Objections to Neher Decl. (Dkt. 28) at 2-3. Several other statements about these meetings are therefore not admissible because they are not based on personal knowledge. *See, e.g.,* Neher Decl. (Dkt. 21-2) ¶ 4 ("I am informed and believe . . . that . . . Maria Wu . . . [was] wrongfully pre-selected for layoff in these meetings without Boeing following the established RIF process.").

Isberner's Declaration regarding the existence and contents of these "secret meetings" is similarly excluded under Rules 802 because he repeatedly uses the same passive voice to conceal the identity of the speaker. *See, e.g.,* Isberner Decl. (Dkt. 21-3) ¶¶ 6, 8 ("We were told to manipulate the numbers on the competency assessments to maintain the employees' positions that had been pre-determined.").

### 2. Isberner's statements about the existence or contents of a list of pre-ranked employees

Plaintiff also relies on statements in Isberner's Declaration regarding "a list of pre-ranked employees" that he "w[as] given." *See* Isberner Decl. (Dkt. 21-3) ¶¶ 6. The existence and contents of this list is excluded under the best evidence rule, which requires that the "original writing" be introduced "to prove its content" unless various exceptions apply, such as where the original writing has been lost or destroyed. *See* Fed. R. Evid. 1002, 1004; *Medina v. Multaler, Inc.*, CV0600107MMMAJWX, 2007 WL 5124009 (C.D. Cal. Feb. 7, 2007) ("A best evidence objection is particularly appropriate where, as here, the alleged writer of the original document does not acknowledge the document's existence."); Defs. Evid. Objections to Isberner Decl. (Dkt. 27) at 9-10. Plaintiff has made no argument nor presented any evidence that such an exception applies here.

### 3. Document listing employees' names, races, genders, and ages

Plaintiff also relies on a document attached to Neher's Declaration that contains several columns which appear to contain employees' names and levels, as well as corresponding information under the column headings "Race," "Age group," and "Gender." *See* Neher Decl. (Dkt. 21-2) Ex. 2. For example, one line contains: (1) the word "Wu" under the column "Names/BEMSID"; (2) the word "asia" under the column "Race"; (3) the phrase "55-65" under the column "Age group"; and (5) the phrase "5 F" under the column "Gender." Neher's sole statement to authenticate the document is that it is "a true and correct copy of a document that I saw at a RIP selection meeting." *See* Neher Decl. (Dkt. 21-2) ¶ 8. This document is excluded under Rule 802 as hearsay because Neher has not provided sufficient detail about the "meeting" at which he "saw" this document for the Court to conclude that this document was created by an agent of Defendant.[7] *See* Defs. Evid. Objections to Neher Decl. (Dkt. 28) at 21-22.[8]

---

[7] Plaintiff's oversight in drafting Neher's Declaration is particularly curious given that Defendant itself admits to firing Neher for releasing "proprietary documents to people outside of [Defendant]." Reply at 3 n.2.

### ii. Plaintiff has not introduced any evidence regarding her comparators' race, gender, or age

Plaintiff also argues that she was terminated "when other less qualified and less experienced employees were not." Opp'n at 17. Plaintiff identifies four such comparator employees: Furman, Graham, Chang, and Hamilton. Plaintiff has identified no evidence showing that these comparators actually were or at least were perceived by Defendant to be a different race, age, or gender than Plaintiff.[9] Because Plaintiff has not shown such a difference, Defendant's favorable treatment of these comparators is irrelevant.

### iii. Conclusion

In sum, the Court excludes Plaintiff's evidence of: (1) two witnesses' statements about the existence and contents of "secret meetings" where employees were selected for termination; (2) a witnesses' statements about the existence or contents of a list of pre-ranked employees; and (3) a document listing employees' names, races, genders, and ages. In addition, Plaintiff's failure to identify the race, age, or gender of her comparators renders her evidence regarding

---

[8] At oral argument, Plaintiff for the first time contended that Defendant's own evidence—namely, a spreadsheet created by one of Defendant's employees—demonstrated that Defendant was aware of the race, age, and gender of Plaintiff and two other employees. *See* Def. Compendium of Evid. (Dkt. 17) at Tab 2 (Lyle Decl. Ex. A). However, as Defendant observed, Plaintiff identified no evidence indicating that the employees who made decisions to terminate Plaintiff were aware of this spreadsheet or the information within it when they made the decision to terminate Plaintiff. This is not to say that such evidence does not exist, only that Plaintiff had failed to identify it.

[9] For example, while Plaintiff's Opposition states that Hamilton is a "White male[]" and cites Wu's Declaration at paragraph 10, the Wu's Declaration says no such thing. *Compare* Opp'n at 7 *with* Wu Decl. (Dkt. 21-1) ¶ 10 ("Ex. 8 is the At Risk of Layoff Notice I received from Boeing. It provides the Assessment Criteria, the Rating, and the Weight. It states that 'as a result of this assessment, at this time I was considered at risk of layoff'.").

Defendant's treatment of the comparators irrelevant.  Because Plaintiff's evidence is either inadmissible or irrelevant, Plaintiff has failed to establish a prima facie case of race, age, or gender discrimination.  Thus, the Court GRANTS Defendant summary judgment on the second claim for discrimination.

### b. First claim for wrongful termination, fourth claim for hostile work environment, seventh claim for failure to maintain a workplace free of discrimination, and eighth claim for intentional infliction of emotional distress

Plaintiff's Opposition demonstrates that the following three claims are predicated on the Court concluding that her discrimination claim survives: (1) first claim for wrongful termination; (2) seventh claim for failure to maintain a workplace free of discrimination; and (4) eighth claim for intentional infliction of emotional distress.  In addition, although Plaintiff's Opposition does not mention her fourth claim for hostile work environment, that claim similarly appears to be predicated on her discrimination claim.  Because the Court granted Defendant summary judgment on the discrimination claim in the previous section, the Court GRANTS Defendant summary judgment on Plaintiff these remaining four claims.

### c. Fifth claim for breach of implied employment contract and sixth claim for breach of the covenant of good faith and fair dealing

Plaintiff's Opposition also demonstrates that the following two claims are predicated on the Court concluding that her discrimination claim survives: (1) fifth claim for breach of implied employment contract; and (2) sixth claim for breach of the covenant of good faith and fair dealing.  Plaintiff argues that the act which constitutes a breach in both these claims was Defendant's use of secret meetings to pre-select employees for termination based on age, gender, or race.  Because the Court granted Defendant summary judgment on the discrimination claim, the Court GRANTS Defendant summary judgment on Plaintiff these remaining four claims.

### d. Third claim for retaliation

Defendant contends that Plaintiff's retaliation claim is based solely upon her April 2009 complaint to Defendant's Equal Employment Opportunity department and that this complaint did not cause her termination because the complaint was made *after* Defendant decided to terminate her. *See* Mem. (dkt. 15) at 11. Plaintiff concedes that "[i]n 2008, [she] was given an At Risk of Layoff Notice and, in 2009 [her] employment was terminated." Wu Decl. (Dkt. 21-1) ¶ 1. It is undisputed that Plaintiff "did not file any complaints during her employment with [Defendant] prior to her April 2009 complaint to [Defendant's Equal Employment Opportunity] department." Defs. Reply Separate Statement of Undisputed Facts (Dkt. 30) ¶ 24.

In her Opposition, Plaintiff appears to contend that her retaliation claim is based on the *same* acts that comprise her discrimination claim—Defendant's decision to "includ[e] plaintiff in the RIF"—acts which occurred *before* her April 2009 complaint. Opp'n at 18. Thus, Plaintiff appears to concede that the acts which constitute retaliation occurred before her complaint. Furthermore, Plaintiff has not identified any other acts as the basis for her retaliation claim; indeed, Plaintiff's Opposition devotes only 11 lines to her claim for retaliation, cites no caselaw, and provides no page or paragraph citation to the declarations that she cites to support her claim. See Opp'n at 18:2-13. The Ninth Circuit has expressly held that "when a party relies on deposition testimony in a summary judgment motion without citing to page and line numbers, the trial court may in its discretion exclude the evidence." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 775 (9th Cir. 2002). "The same is true to references to an affidavit without citing to paragraph numbers." *Id.* at 775 n.14 (9th Cir. 2002). The policy behind this rule is that "efficient management of judicial business mandates that parties submit evidence responsibly." *Id.* at 775.

Because Plaintiff has not directed this Court to any evidence that Plaintiff made complaints other than her April 2009 complaint nor identified any acts by Defendant after that complaint, the Court GRANTS Defendant summary judgment on the third claim for retaliation.

**IV. Disposition**

For the forgoing reasons, the Court GRANTS Defendant summary judgment on all eight of Plaintiff's claims.

DATED: August 22, 2012

                                      */s/ David O. Carter*
                                      DAVID O. CARTER
                            UNITED STATES DISTRICT JUDGE